# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIZEKIEL KUMAR,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | Case No. 1:26-cv-02720-KES-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DENYING PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL<br><br>(ECF No. 3) |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

For the reasons set forth herein, the undersigned recommends denying the petition for writ of habeas corpus.

## I.

## BACKGROUND

Petitioner is a citizen of Fiji who was admitted to the United States on or about December 3, 2013 as a non-immigrant (B-2) visitor with authorization to remain until March 3, 2014. Petitioner remained in the United States without authorization. On February 15, 2018, he was issued a Notice to Appear charging him pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). (ECF No. 10 at 9.[1])

---

[1] Page numbers refer to the ECF pagination stamped at the top of the page.

On September 20, 2019, Petitioner was convicted of evading a peace officer and sentenced to 179 days in jail and three years of probation. On October 11, 2022, Petitioner was convicted of evading a peace officer and receiving stolen property and was sentenced to one day in jail and two years probation. On August 20, 2024, Petitioner was convicted of receiving stolen property and fleeing a pursuing peace officer's motor vehicle and was sentenced to sixteen months in prison. (ECF No. 10 at 32.)

Petitioner was referred to U.S. Immigration and Customs Enforcement ("ICE") while imprisoned with the California Department of Corrections and Rehabilitation. (ECF No. 10 at 31.) Petitioner has been detained in Department of Homeland Security ("DHS") custody since March 27, 2025. (ECF No. 1 at 5.) On February 2, 2026, an immigration judge held a bond hearing and denied bond, finding Petitioner a danger and flight risk. (ECF No. 10 at 35.)

On April 10, 2026, Petitioner filed the instant petition for writ of habeas corpus, asserting that his prolonged detention without a bond hearing violates due process. (ECF No. 1 at 6–16.) On March 27, 2026, Respondent filed a response. (ECF No. 10.) To date, no traverse, and the time for doing so has passed.

## II.

## DISCUSSION

### A. Exhaustion

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived. Id. (citations omitted). "Courts may require prudential exhaustion if":

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). "Nonetheless, even if

the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Respondents argue that "Petitioner has not exhausted his administrative remedy to contest his mandatory detention under the procedures available in immigration court" pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). (ECF No. 10 at 3.) "Anyone who believes that he is not covered by § 1226(c) may also ask for what is known as a '*Joseph* hearing.'" Jennings v. Rodriguez, 583 U.S. 281, 289 n.1 (2018). "At a *Joseph* hearing, that person 'may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the [Government] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" Id. (alteration in original) (quoting Demore v. Kim, 538 U.S. 510, 514 n.3 (2003)).

Here, however, Petitioner does not contest that he is subject to mandatory detention under § 1226(c). Rather, Petitioner asserts that his prolonged detention without a bond hearing violates due process. (ECF No. 1 at 6–16.) Accordingly, the Court recommends finding that prudential exhaustion of administrative remedies is not required.

**B.  Immigration Detention Statutes and Bond Hearings**

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Here, Respondents assert that Petitioner is detained pursuant to 8 U.S.C. § 1226(c),[2] which provides in pertinent part that the "Attorney General shall take into custody any alien who

---

[2] The Ninth Circuit has "conclude[d] that Subsection C applies throughout the administrative and judicial phases of removal proceedings." Avilez v. Garland, 69 F.4th 525, 535 (9th Cir. 2023).

. . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]" 8 U.S.C. § 1226 (c)(1)(B). Section 1226(c) "specif[ies] that the Attorney General 'may release' one of those aliens '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (emphasis in original).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court held that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).

\\\

"In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). This culminated in Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), in which the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). Importantly, the Ninth Circuit applied the canon of constitutional avoidance to interpret these immigration detention provisions as providing a *statutory* right to a bond hearing once detention become prolonged. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022).

In Jennings v. Rodriguez, the Supreme held that the Ninth Circuit misapplied the constitutional avoidance canon to find that "§§ 1225(b)(1) and (b)(2) contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a), which allows for bond hearings in certain circumstances." 583 U.S. at 297–98. Jennings also rejected the Ninth Circuit's interpretation of a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 306. The case was remanded to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit likewise remanded the case to the district court to consider the constitutional arguments in the first instance but observed that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

\\\

There has been a dearth of guidance regarding the point at which an immigration detainee's continued mandatory detention becomes unconstitutional. See Rodriguez Diaz, 53 F.4th at 1203 (noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context"). The Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c), but it has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) (citation omitted), vacated on other grounds, 144 S. Ct. 1339 (2024).

In upholding mandatory detention under 8 U.S.C. § 1226(c) in Demore, the Supreme Court made repeated references to the "brief" and "limited" timeframe at issue. See Demore, 538 U.S. at 513 ("brief period"); id. at 523 (("brief period"); id. at 526 ("limited period"); id. at 529 n.12 ("[t]he very limited time of the detention at stake under § 1226(c)"); id. at 531 ("limited period"). Demore specifically noted that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal," relying on statistics from the Executive Office for Immigration Review ("EOIR"). 538 U.S. at 530. However, "[t]hirteen years after the decision in Demore, the government admitted that the figures it provided to the Court, and which the Court relied on, contained 'several significant errors,'" and for the years 1999–2001, the "average length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Rodriguez v. Nielsen, No. 18-CV-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citing Letter from Acting Solicitor General Ian H. Gershengorn to Hon. Scott S. Harris (Aug. 26, 2016), at 2, 3, Demore v. Kim, 538 U.S. 510 (2003) (No. 01-1491)). "The data from the Jennings case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual

detention periods exceeding four years." Rodriguez, 2019 WL 7491555, at *5 (citing Joint Appendix (Table 20) (Aug. 26, 2016), Jennings v. Rodriguez, 583 U.S. 281 (2018) (No. 15-1204)). The Government Accountability Office conducted a study and "found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days." Rodriguez, 2019 WL 7491555, at *5 (citing United States Government Accountability Office, Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational Challenges 33 (2017), https://www.gao.gov/assets/690/685022.pdf).

As noted above, the Supreme Court rejected a *facial* challenge to mandatory detention under 8 U.S.C. § 1226(c) in Demore. See Demore, 538 U.S. at 514 ("Respondent . . . filed a habeas corpus action pursuant to 28 U.S.C. § 2241 . . . challenging the constitutionality of § 1226(c) *itself*." (emphasis added)); Black v. Decker, 103 F.4th 133, 149 n.22 (2d Cir. 2024) ("*Demore* ruled on a due process challenge to the facial constitutionality of section 1226(c)[.]"). In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court expressly preserved the right to bring an as-applied challenge: "Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. See Black, 103 F.4th at 149 (*Demore* "said nothing about whether due process may *eventually* require a hearing. If *Demore* had, in fact, foreclosed the due process challenge now before us, the *Jennings* Court would have had no reason to remand to the Ninth Circuit 'to consider ... in the first instance' the detainees' argument that '[a]bsent ... a bond-hearing requirement, ... [section 1226(c)] would violate the Due Process Clause of the Fifth Amendment.'" (alterations in original) (quoting Jennings, 583 U.S. at 291, 312)).

Based on the foregoing, the Court finds that Petitioner's as-applied constitutional challenge is not foreclosed.

**C. Due Process Analysis**

Courts in the Ninth Circuit have taken a variety of approaches to determine whether due process requires a bond hearing in a particular immigration detention case. See, e.g., Rodriguez,

2019 WL 7491555, at *6 (applying bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner] to a bond hearing" in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government" in § 1226(c) context).

There are also some courts that apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). In Rodriguez Diaz, which concerned a noncitizen detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond hearing at which the government bears the burden of proof by clear and convincing evidence," the panel majority "assume[d] without deciding" that the Mathews test applied, noting that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," and finding "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework

to determine whether there was a due process violation." Rodriguez Diaz, 53 F.4th at 1219 (Wardlaw, J., dissenting). See also Black, 103 F.4th at 147 ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should also be reviewed under *Mathews*"); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382 (E.D. Cal. May 16, 2025) (applying Mathews test to determine whether due process entitled petitioner to a bond hearing in § 1225(b) context), findings and recommendations adopted, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

Petitioner contends that "[d]etention without a bond hearing is unconstitutional when it exceeds six months," and even absent a bright-line six-month standard, his "detention without any individualized review, is unreasonable under the *Mathews v. Eldridge* due process test" or alternatively, "under the multi-factor reasonableness test the Third Circuit adopted in *German Santos v. Warden Pike Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020)." (ECF No. 1 at 7, 8.) Given that the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings," Rodriguez Diaz, 53 F.4th at 1193, the Court will apply the Mathews test in addition to addressing the bright-line rule.

### 1. Bright-Line Rule

The First, Second, and Third Circuits have "reject[ed] a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention— in the context of a Congressional mandate, in the immigration context, to detain." Black, 103 F.4th at 150 (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court finds such authority persuasive and declines to adopt a bright-line rule that detention without a bond hearing is presumptively unconstitutional when it exceeds six months.

### 2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action;
> second, the risk of erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

### a. Private Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews*." (quoting Singh, 638 F.3d at 1208)). Accordingly, the undersigned recommends finding that the first Mathews factor weighs in favor of Petitioner.

However, the Court is cognizant that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that" but "must also consider the process he received during this time" and "the further process that was available to him." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner already received one bond hearing before an IJ.

### b. Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout

detention." Jensen v. Garland, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing Rodriguez Diaz, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

Petitioner is detained under § 1226(c) and thus, does not have a statutory right to a bond hearing. However, approximately six months ago on February 2, 2026, Petitioner had an individualized bond hearing before an IJ. The IJ denied bond based on danger to the community and risk of flight. Petitioner had the right to appeal that decision to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for release on bond, the decision "would also be subject to judicial review in habeas." Rodriguez Diaz, 53 F.4th at 1210. Like the petitioner in Rodriguez Diaz, the determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small'" at the time of Petitioner's first and second bond hearings. Rodriguez Diaz, 53 F.4th at 1210 (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)).

Further, Petitioner does not establish "the probable value, if any," Mathews, 424 U.S. at 334, of an additional bond hearing six months after he already had a bond hearing. Petitioner does not argue that there are changed circumstances or additional evidence not previously available that would likely result in a different outcome. Accordingly, the undersigned recommends finding that the second Mathews factor weighs against Petitioner.

### c.  Government's Interest

With respect to the third and final factor, the Court recognizes that "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law'" and "has an obvious interest in 'protecting the public from dangerous criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's

order of removal take, the more resources the government devotes to securing an alien's ultimate removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

It is important to stress that the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz, 2020 WL 1862254, at *7. See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not* the government's interest in immigration enforcement" "in general" (emphasis added)); Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low.").

Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a) detention, the parties did not contest "that the cost of conducting a bond hearing, to determine whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he government has not offered any indication that a [ ] bond hearing would have outside effects on its coffers"). Accordingly, the third Mathews factor weighs in favor of Petitioner.

### d. Conclusion

Based on the foregoing, the undersigned recommends finding that the low risk of erroneous deprivation outweighs Petitioner's private interest in freedom from prolonged detention and the government's weak interest in continuing to detain Petitioner without a second bond hearing and that due process does not compel a second bond hearing at this time. Should circumstances change, however, due process may dictate a different outcome.

\\\

### D. Motion for Appointment of Counsel

Petitioner has moved for appointment of counsel. (ECF No. 3.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See, e.g., Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Anderson v. Heinze, 258 F.2d 479, 481 (9th Cir. 1958). However, 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the proceeding for financially eligible persons if "the interests of justice so require." To determine whether to appoint counsel, the "court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983).

In light of the Court's conclusion that Petitioner is not entitled to habeas relief, the undersigned will deny Petitioner's motion for appointment of counsel.

### III.

### RECOMMENDATION & ORDER

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

Further, the Court HEREBY ORDERS that Petitioner's motion for appointment of counsel (ECF No. 3) is DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the

\\\

right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **August 4, 2026**            /s/ Erica P. Grosj

UNITED STATES MAGISTRATE JUDGE

14